```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ALABAMA
                      WESTERN DIVISION

SHELIA B. RUSSELL,              )
                                )
        PLAINTIFF,               )
                                )
VS.                             )    CV-01-H-218-W
                                )
ALABAMA DEPARTMENT OF MENTAL    )
HEALTH; MIKE MATHIS, in his     )
individual capacity and as      )
Director of the Human Resources )
Department for the Mary Starke  )
Harper Mental Health Facility,  )
                                )
        DEFENDANTS.              )
                                )
```

**ENTERED**

**MAY 1 5 2002**

### MEMORANDUM OF DECISION

In her March 14, 2001 amended complaint, plaintiff pursues in Count I a Title VII and a 42 U.S.C. § 1983 race discrimination claim against her employer, the State of Alabama, for its failure to promote her in the Spring of 2000. In Counts II and III she pursues § 1983 equal protection claims associated with the same alleged race discrimination against Mike Mathis both individually and as Director of the Human Resources Department for the Mary Starke Harper Mental Health Facility (Harper Center) where plaintiff was employed.

The court has before it the February 4, 2002 motion of defendants for summary judgment. The motion, as discussed in the brief filed with it, seeks judgment in favor of defendants,

asserting that plaintiff cannot make out a *prima facie* case of race discrimination under Title VII or under the equal protection clause.  The motion separately seeks judgment in favor of defendants on the ground that plaintiff has not and cannot show that the legitimate reasons articulated by defendants for the challenged employment decision were a pretext for unlawful race discrimination.

The parties have submitted extensive evidence and briefs in support of their respective positions on the issues raised by the motion for summary judgment.  Pursuant to the February 5, 2002 order, the motion for summary judgment is now under submission.[1]

The following are the relevant undisputed facts. In March 2000 Jennifer Porter, with an ASA II classification, had been serving as an administrative assistant at the Harper Center operated by the Alabama Department of Mental Health and Mental Retardation (Department of Mental Health) for approximately five years.  She requested a transfer to an available position with the same classification in the Alabama Department of Revenue (Department of Revenue).  Such a transfer is a lateral transfer involving no promotion, no change in pay and no change in benefits and is authorized where both affected departments approve.  The Department of Mental Health and the Department of

---

[1] This case is primarily a Title VII claim that has in it § 1981 and § 1983 claims predicated upon the same facts and circumstances as the Title VII claim.  The court will discuss the case in terms of a Title VII disparate treatment claim only, but what is said applies equally to the § 1981 and § 1983 claims.

Revenue both approved, with May 6, 2000 the effective date of the transfer.  As part of his duties as Personnel Director for the Harper Center, defendant Mathis drafted paperwork for the Harper Center Appointing Authority, Kathy Grissom,[2] to request permission from the Department of Mental Health to fill the ASA II Porter vacancy by merit certification.  The drafted paperwork was executed by Ms. Grissom on April 17, 2000, and forwarded to the Central Office Personnel Division of the Department of Mental Health for processing. On April 29, 2000, following approval by the Commissioner of the Department of Mental Health, the paperwork was forwarded to the State Finance Director for his approval.  The paperwork was returned to the Department of Mental Health by the Finance Director on May 11, 2000, with a request that the Department of Mental Health justify the position being an ASA II instead of ASA I.  The returned paperwork reached defendant Mathis on May 15, 2000.  On approximately the same day, Porter, who had worked about one week at the Department of Revenue position, contacted Mathis, told him she was not happy with the new job, and inquired if it was possible for her to return to her position at Harper Center.  Mathis advised her he would check to see if a transfer back was possible.  Roxanna T. Bender, who became Director of the Harper Center on June 3, 2000 upon the retirement of Ms. Grissom,[3] fully supported the

---

[2] Ms. Grissom was Director of the Harper Center, scheduled to retire in about a month.

[3] Ms. Bender actually functioned as Director a short time prior to the June 3, 2000 official date.

3

retransfer. Ms. Bender obtained the approval for the retransfer of Porter from her supervisor and instructed defendant Mathis to work it out with the Department of Revenue and the State Personnel Department. The retransfer then took place. It also was a lateral transfer in the same classification of ASA II, and became effective June 6, 2000.

Plaintiff has offered no evidence that disputes the foregoing or that supports the following charge in her EEOC complaint:

> It is believed that Jennifer Porter's last day of employment was May 5, 2000. During that time, Mike Mathis was aware of Jennifer Porter's intent to leave her employment, not once did he seek to fill the position vacated by Jennifer Porter through procedures set forth by the State Personnel Department and Department of MH/MR following all federal and state's regulations to ensure fair employment practices.

She has come forward with no evidence that the foregoing articulated reason for the Porter vacancy being refilled by Porter is a pretext for unlawful race discrimination. And she has failed to produce any evidence that the decision makers involved in the process were in any way motivated by race in the decision-making process.

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000). The party

asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings, which it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial. <u>Celotex</u>, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. <u>Chapman</u>, 229 F.3d at 1023; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. <u>Chapman</u>, 229 F.3d at 1023; <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson</u>, 477 U.S. at 248; <u>Chapman</u>, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. <u>Anderson</u>, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. <u>See</u> <u>Fitzpatrick</u>, 2 F.3d at 1115-17 (citing <u>United States v. Four Parcels of Real Property</u>, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)). If the

moving party bears the burden of proof at trial then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. <u>Fitzpatrick</u>, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of any evidence in the record in support of a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. <u>Fitzpatrick</u>, 2 F.3d at 1115-16. If

the movant meets its initial burden by using this second method, the non-moving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. Lewis v. Casey, 518 U.S. 343 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)). The Court is aware that the summary judgment rule applies in job discrimination cases just as in other cases. See Chapman, 229 F.3d at 1025 (rejecting an earlier, contrary general rule and emphasizing that no thumb is to be placed on either side of the scale).

The analysis of the plaintiff's claims will be determined not only by the nature of the allegations but also by the quality of the evidence offered in support of those claims. See Standard v. A.B.E.L. Servs., 161 F.3d 1318, 1330 (11th Cir. 1998), (noting that "[t]he analytical framework and burden of production var[y] depending on the method of proof chosen"). In general, a plaintiff may attempt to establish a claim of illegal employment discrimination through the use of direct evidence, circumstantial (indirect) evidence, or statistics. See id.; see also Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999 (recognizing the availability of either direct or circumstantial evidence). A

plaintiff's ability to proceed through the use of circumstantial evidence of discrimination is necessarily important because direct proof of discrimination is uncommon. See Combs v. Plantation Patterns, 106 F.3d 1519, 1537 (11th Cir. 1997); Grigsby v. Reynolds Metals Co., 821 F.2d 590, 595 (11th Cir. 1987). Direct evidence is "[s]uch evidence [which], if believed, proves the existence of a fact in issue without inference or presumption." Burns v. Gadsden State Community College, 908 F.2d 1512 (11th Cir. 1990). Cf. Wright v. Southland Corp., 187 F.3d 1287, 1293-94 (11th Cir. 1999) (per Tjoflat, J.) (defining direct evidence as "evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic" and finding the outcomes reflected in prior case law consistent with that definition).

Here, plaintiff has presented only circumstantial evidence of racial discrimination. "In evaluating [discrimination] claims supported by circumstantial evidence, [the courts of this circuit] use the now-familiar framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)." Combs, 106 F.3d at 1527. Under the McDonnell Douglas and Burdine framework, the plaintiff first has the burden of establishing a *prima facie* case of discrimination, which creates a rebuttable presumption that the

employer acted illegally. See id. at 1527-28. The methods of presenting a *prima facie* case, as well as the exact elements of the case, are not fixed; rather they are flexible and depend to a large degree upon the facts of the particular situation. See, e.g., Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1185 (11th Cir. 1984); Lincoln v. Board of Regents of Univ. Sys., 697 F.2d 928, 937 (11th Cir. 1983). In general a plaintiff establishes a *prima facie* case of disparate treatment employment discrimination by showing that he or she was a qualified member of a protected class and was subjected to an adverse employment action but that otherwise similarly situated employees outside the plaintiff's class were treated dissimilarly [4] See McDonnell Douglas, 411 U.S. at 802 (hiring); Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) (discipline); see also Nix, 738 F.2d at 1185 (discipline); Pittman v. Hattiesburg Mun. Separate Sch. Dist., 644 F.2d 1071, 1074 (5th Cir. 1981) (wages).

Once the plaintiff has shown a *prima facie* case and, thereby, has raised the presumption of discrimination, the burden of production shifts to the employer to articulate a legitimate,

---

[4] See also McDonnell Douglas, 411 U.S. at 802 n.13 ("The facts necessary will vary in Title VII cases, and the specification above of the *prima facie* proof required from respondent is not applicable in every respect in different factual situations."). In using a comparator to establish a *prima facie* case, the comparator must be "similarly situated in all relevant aspects." Silvera v. Orange County School Board, 244 F.3d 1253, 1259 (11th Cir. 2001).

non-discriminatory reason for its actions.⁵  See Combs, 106 F.3d at 1528.  The employer "need not persuade the court that it was actually motivated by the proffered reasons."  Burdine, 450 U.S. at 254-55; see Chapman, 229 F.3d at 1024.  If the employer satisfies that burden by articulating one or more such reasons, then the presumption of discrimination falls and the burden of production again shifts to the plaintiff to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination.⁶  Where the defendant articulates multiple, reasonable, legitimate and non-discriminatory reasons, plaintiff must rebut each of defendant's proffered reasons.  See Chapman, 229 F.3d at 1024-25. Although the *prima facie* case is irrelevant once the employer has offered a legitimate reason for its actions, the evidence of pretext may include the same evidence offered to establish the *prima facie* case.  See Combs, 106 F.3d at 1528.

Despite this shifting of the burden of production between the plaintiff and the defendant under the McDonnell Douglas and Burdine framework, "[t]he ultimate burden of persuading the trier

---

⁵ See Chapman, 229 F.3d at 1032 (A subjective reason is a legally sufficient, legitimate, non-discriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which the employer based its subjective opinion.).

⁶ If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it.  Simply quarreling with that reason is not sufficient.  Chapman, 229 F.3d at 1030.

10

of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at. 253. Given that the ultimate burden of persuasion always lies with the employee, a plaintiff may prevail on an employment discrimination claim and may also defeat a summary judgement either by proving that intentional discrimination did indeed motivate the defendant or by producing sufficient evidence to allow a rational trier of fact to disbelieve the employer's proffered legitimate reasons, thus permitting but not compelling the trier of fact to make a finding of illegal discrimination. See Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2108-09 (2000) (pointing out that the production of the necessary sufficient evidence by plaintiff will not always prevent the employer from prevailing on a Rule 50 motion and suggesting that the strength of plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other properly considered evidence that supports the employer's case are among other factors to take into account in evaluating a Rule 50 motion);[7] St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993); Abel v. Dubberly, 210 F.3d 1334, 1339 (11th Cir. 2000); Alexander v. Fulton County, 207 F.3d 1303, 1336 (11th Cir. 2000); Combs, 106 F.3d at 1529-38 (interpreting Hicks and the post-Hicks

---

[7] The court in Chapman modified the statement in Combs contrary to this holding in Reeves after noting that the standard for granting summary judgment mirrors the standard for judgment as a matter of law. See Chapman, 229 F.3d at 1025, n.11.

case law); Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 920-21 (11th Cir. 1993).

Assuming a *prima facie* case has been established,[8] defendant has made a very strong showing of an articulated legitimate and non-discriminatory reason for its decision to permit Porter to transfer back from the Department of Revenue to her old position before the Harper Center ever had authority from the State Finance Director to fill the position, which reason the plaintiff has failed to rebut. See Combs, 106 F.3d at 1527-29 (explaining that once an employment discrimination plaintiff establishes a *prima facie* case, the burden of production then shifts to the defendant to articulate legitimate, non-discriminatory reasons for its action, following which the burden of production then shifts back to the plaintiff to offer evidence tending to show that the defendant's proffered reasons are really pretext for illegal discrimination); Chapman, 229 F.3d at 1024-25 (same as above). The Eleventh Circuit has clearly stated that "[f]ederal courts 'do not sit as a super-personnel department that reexamines an entity's business decision. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no mater how mistaken the firm's managers, the [court] does not interfere. Rather our inquiry is limited to whether the employer gave an honest explanation of its behavior.'" See id. at 1030 (quoting Elrod v. Sears, Roebuck & Co., 939 F.2d 1466,

---

[8] This is an assumption to which plaintiff is probably not entitled.

12

1470 (11th Cir. 1991) (citations omitted)); see also <u>Nix v. WLCY Radio/Rahall Communications</u>, 738 F.2d 1181, 1187 (11th Cir. 1984) (An "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.") <u>Abel v. Dubberly</u>, 210 F.3d 1334, 1339 n.5 (11th Cir. 2000). In this case, defendant provided a legitimate reason for Hodges' termination.

Certainly the paucity of evidence from plaintiff of pretext does not satisfy the requirement of <u>Combs</u> and <u>Chapman</u> which require a production of evidence to create a factual or credibility issue as to the articulated reason for the employment decision given by a defendant. <u>Chapman</u>, 229 F.3d at 1024-25; <u>Combs</u>, 106 F.3d at 1529. Although plaintiff quarrels with defendant's reasoning, plaintiff has offered insufficient evidence to show that defendant's decision was in fact <u>motivated by</u> a prohibited factor. <u>See Lee v. GTE Fla., Inc.</u>, 226 F.3d 1249, 1253 (11th Cir. 2000). Because plaintiff has failed to rebut defendant's articulated, legitimate and non-discriminatory reason, defendant's motion for summary judgment is due to be granted.

In summary, the court finds that plaintiff has failed to establish her claim of Title VII discrimination and has failed to establish her claims under § 1981 and § 1983 against any defendant. Because no material issues of fact remain and because

13

defendants are entitled to judgment as a matter of law, summary judgment is appropriate. A separate order will be entered.

DONE this 15th day of May, 2002.

James W. Hancock
SENIOR UNITED STATES DISTRICT JUDGE